UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SAYED KHALIL, WAYNE WALKER, MOHAMED
ELMAHDY, and BRIAN LAHOFF, on behalf of
themselves and all others similarly situated,

    07 Civ. 695 (RJH) (THK)

    **DECLARATION OF LOUIS PECHMAN IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEYS' FEES AND COSTS**

               Plaintiffs,

-against-

THE ORIGINAL HOMESTEAD RESTAURANT,
INC., d/b/a OLD HOMESTEAD, GREGORY
SHERRY, MARC SHERRY, and LUIS ACOSTA,

    **ECF CASE**

              Defendants.
------------------------------------------------------------X

    LOUIS PECHMAN, an attorney duly admitted to practice in the Southern District of New York, declare under penalty of perjury:

    1.    I am a partner at Berke-Weiss & Pechman LLP ("BWP"), and lead counsel for plaintiffs Sayed Khalil, Wayne Walker, Mohamed Elmahdy, Brian LaHoff, Spirodon Hiotis, Sebastian Gac, Eric Liberatos, and Christos Tsavegias (the "plaintiffs") in this matter. I make this declaration in support of an application for attorneys' fees pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b) ("FLSA"), the New York Labor Law § 198, and the terms of the Offer of Judgment, covering the hours and costs that BWP has expended on this matter. I am familiar with the facts discussed herein and attach as exhibits true and correct copies of the documents attached hereto.

    2.    BWP is a five-attorney firm in Manhattan that represents both employees and management in a wide variety of employment law issues, including, *inter alia*, claims of discrimination and harassment based on sex, race, disability, or age, retaliation, First Amendment retaliation, claims of wage and hour and overtime, and claims concerning union-management issues.

3. According to BWP's policy, a partner must be in charge of all litigations in which the firm is involved. I was the partner responsible for this matter.

4. All attorneys and interns at BWP are instructed to maintain contemporaneous time records reflecting the time spent on this and other matters. Time is kept in one of two ways at BWP. It is either typed into a computer program directly by the timekeeper, or the timekeeper maintains a handwritten log of the daily time, which is then typed into the computer time keeping program by a staff assistant. In both situations, the timekeeper indicates the date and amount of time spent on a task to one-tenth of an hour, describes the work that was performed during the specified time period, and identifies the case to which the time should be charged. The partners of the firm review all time input by timekeepers for accuracy on a daily basis.

**BWP'S Involvement In The Matter**

5. Plaintiffs retained BWP in November 2006 to litigate their claims, and a Complaint was filed by BWP on January 30, 2007, in the United States District Court, Southern District of New York. As the partner in charge of this matter, I oversaw the staffing of associates and interns, as well as the work of other firm personnel necessary to appropriately and capably litigate the case through discovery and the matter's conclusion.

6. The core legal team litigating this case consisted of Jaime Duguay and myself. Other attorneys and legal interns also contributed time on various aspects of the case, however, their time has not been included in this application.

7. Discovery in this document-intensive case spanned over one year. In total, plaintiffs propounded sixty-two (62) document requests and took or defended two depositions. Plaintiffs responded to fifty-one (51) document requests from defendants. As a result, BWP reviewed thousands of plaintiffs' documents, and

actually produced about 1960 pages of documents to defendants, and reviewed and analyzed over 3935 pages of documents produced by defendants.

8. BWP spent time evaluating the case, drafting a detailed and fact specific complaint, and reviewing the complex legal issues involved. BWP successfully moved to certify this case as a collective action, including submitting an affidavit by Sayed Khalil regarding his knowledge of the factual issues in this case. BWP also expended time on legal research regarding certifying this case as a class action. BWP reviewed thousands of plaintiffs' documents, including scraps of clock in/clock out sheets, customer checks, "employee detail" reports, and payroll records. The parties devoted time to engaging in settlement negotiations, albeit ultimately unsuccessful. BWP also spent time defending against baseless allegations by defendants regarding my and Khalil's behavior at the two depositions in this case.

9. The parties spent a significant amount of time resolving discovery issues. Disputes regarding document productions were the subject of one court conference and multiple letters, one of which was Endorsed by the Court, Ordering defendants to produce documents responsive to plaintiffs' requests by May 2, 2008, defendants failed to do so having previously been ordered to produce the documents during a March 20, 2008 conference. Additionally, plaintiffs spent tens of hours reviewing and sorting through the thousands of documents produced by defendants in a fruitless attempt to find any documents that were responsive to plaintiffs' requests. Plaintiffs also expended many hours in telephone calls and correspondence with defendants in an attempt to secure relevant documents. Minimally responsive documents were finally produced by defendants on May 5, 2008, three days after the Court's instructed deadline, and six days after defendants served BWP with an Offer of Judgment.

10. As the Court is aware, the parties disagreed on several discovery issues. As a result, plaintiffs exchanged correspondence with defendants and this Court, which addressed issues including, but not limited to: a subpoena served on one of the plaintiff's current "day job" employer, defense counsel's accusations of misconduct by plaintiffs and myself, defendants repeated failure to produce relevant and requested documents, and the discontinuance of one of the plaintiff's depositions by defense counsel during questioning.

11. In addition, defendants opposed plaintiffs' motion to certify this case as a collective action, which was ultimately granted by the Court on August 9, 2007.

**BWP's Time and Disbursement Records**

12. In preparing this fee application, we have reviewed every single time record and have deducted purely administrative work. We also have deducted all attorney time that we have deemed, in retrospect, to have been excessive or duplicative. In addition, we have deducted time expended by four attorneys and two legal interns who spent various amounts of time on the case which may have been redundant or inefficient because they were not thoroughly familiar with the facts of this case. We also have deducted all time relating to day-to-day consultations with plaintiffs regarding their claims of harassment by management as a result of their participation in this litigation.

13. As such, I have reviewed our time records and the disbursement reports, and certify that these records reflect work reasonably and necessarily performed, and expenses reasonably and necessarily incurred in connection with the litigation of this matter.

14. BWP has incurred costs in the amount of $ 2,612.15. (See Exhibit A.) The costs are of the type normally charged to clients of BWP. The costs and expenses

4

identified in Exhibit A are reflected in the accounting books and records BWP maintains in the ordinary course of business. The out-of-pocket costs incurred by BWP to prosecute this case were for customary litigation expenses like court reporters' fees, filing fees, photocopying, document production services, and postage.

15. The following is a simplified chart of the actual fees and costs for which BWP is seeking reimbursement:

| Total Fees: | $ 117,125.00 |
| Total Costs: | $ 2,612.15 |
| Total Award Sought: | $ 119,737.15 |

| Attorney | Total Hours | Hourly Rate | Total Fee Requested |
| --- | --- | --- | --- |
| LP | 75.3 | Nov 13 2006 to Dec 31 2007 @ $400/hr | $ 30,120.00 |
|  | 75.1 | Jan 1 2008 to June 13 2008 @ $500/hr | $ 37,550.00 |
| JD | 329.7 | $150/hr | $ 49,455.00 |

**My Qualifications**

16. I am a 1979 graduate of the School of Industrial and Labor Relations at Cornell University and received my J.D. degree from Fordham University School of Law in 1983.

17. Upon graduation from Fordham Law, and in the 25 years following, I have specialized in labor and employment law. Before co-founding BWP with Laurie Berke-Weiss in 1996, I was an associate at three New York law firms, Skadden, Arps, Slate, Meagher & Flom LLP, Vladeck, Waldman, Elias & Engelhard, P.C., and Lambos & Giardino, and I also worked as an in-house labor counsel at the Daily News, and as a Field Examiner with the National Labor Relations Board. I am admitted to practice law

in the States of New York and New Jersey, and before the United States District Courts, Southern and Eastern Districts, and the United States Supreme Court.

18.     I have been active in the labor and employment committees in various bar associations, and since 1996 have moderated a program at the New York County Lawyers' Association on "Handling Employment Discrimination Cases." Ms. Berke-Weiss is a past President of the New York Women's Bar Association.

19.     Since founding BWP with Laurie Berke-Weiss in 1996, we have focused our practice on labor and employment law. I have handled such cases from intake to settlement, motion practice, and trying them to a conclusion. BWP is "A-V" rated by Martindale-Hubbell, and Ms. Berke-Weiss and I were selected by our peers for inclusion in *The Best Lawyers in America* 2008, and were selected for inclusion in the 2007 edition of *New York Super Lawyers*. My current hourly rate, which has been in effect since January 1, 2008, is $500 per hour. This is the rate that clients routinely and customarily pay. This hourly rate went into effect on January 1, 2008, an increase from my prior customary rate of $400 per hour.

**My Work in this Case**

20.     BWP seeks compensation for the time I spent on this matter between November 13, 2006 and June 13, 2008. During this period, I have served as lead counsel on this case. In that capacity, I have engaged, *inter alia*, in the following activities on behalf of plaintiffs:

      a.    reviewed and analyzed all of the pleadings, discovery, deposition transcripts, letter submissions, motion papers, and Court orders and decisions in this matter;

      b.    consulted and strategized with plaintiffs;

      c.    prepared for and taken the deposition of Luis Acosta and prepared for and defended the partial deposition of plaintiff Sayed Khalil;

6

        d.      reviewed and analyzed thousands of documents concerning the pay practices of defendants;

        e.      attended court conferences;

        f.      drafted, reviewed, and revised letter submissions to the Court;

        g.      drafted, reviewed, and revised motion papers;

        h.      drafted, reviewed, and revised correspondence to defendants' counsel;

        i.      conferred with defendants' counsel; and

        j.      reviewed defendants' document productions.

21. Based on the prevailing rates for attorneys of my experience while working at BWP as an attorney with twenty-five years of practice with the requisite experience in federal litigation, BWP seeks a rate of $400 per hour for my hours billed from the inception of this case until December 31, 2007, and a rate of $500 per hour for my hours billed from January 1, 2008 until June 13, 2008. These rates are consistent with or below the rates awarded to labor and employment litigators of comparable experience in New York City, where BWP is located.

22. As set forth in the billing records attached as Exhibit A, I have expended more than 150.4 hours in this matter between November 13, 2006 and June 13, 2008. Accordingly, BWP respectfully requests a fee award of $67,670.00 for my work on this matter.

23. BWP's hourly rate clients are routinely willing to pay and do pay the rates charged by BWP lawyers for work performed on cases in the Southern and Eastern Districts of New York. BWP's rates are consistent with the rates awarded to labor and employment litigators of comparable experience in New York City, where BWP is located.

**Jaime Duguay's Qualifications**

24.     Jaime Duguay received her J.D. degree, *cum laude*, from New York Law School in 2006. At New York Law School, she was a member of the New York Law School Moot Court Association and was a National Finalist at the Regent University National Constitutional Law Moot Court Competition. Ms. Duguay is admitted to practice in the State of New York and before the United States District Courts of the Southern and Eastern Districts.

25.     In November 2006, Ms. Duguay joined BWP as an associate. In this capacity, she works exclusively on a number of labor and employment cases, including wage-and-hour, retaliation, discrimination, and other matters. She researches litigation issues, reviews documents, drafts legal memoranda, sections of briefs, and letters, and consults with clients of BWP.

**Duguay's Work in this Case**

26.     BWP seeks compensation for the time Ms. Duguay spent on this matter between November 13, 2006 and June 13, 2008. During this period, Ms. Duguay served as counsel on this case. In that capacity, Ms. Duguay engaged, *inter alia*, in the following activities in support of plaintiffs:

        a.    reviewed and analyzed all of the pleadings, discovery, deposition transcripts, letter submissions, motion papers, and Court orders and decisions in this matter;

        b.    reviewed and analyzed thousands of documents concerning the pay practices of defendants;

        c.    spent time consulting and strategizing with plaintiffs;

        d.    attended the deposition of Luis Acosta and the partial deposition of plaintiff Sayed Khalil;

        e.    attended court conferences;

8

  f. drafted, reviewed, and revised letter submissions to the Court;

  g. drafted, reviewed, and revised motion papers;

  h. drafted, reviewed, and revised correspondence to defendants' counsel;

  i. contacted CompuPay and Paychex representatives in regard to potential subpoenas of the companies' records;

  j. conferred with defendants' counsel;

  k. drafted and researched issues for Plaintiffs' Memorandum of Law in Support of their Motion for Attorneys' fees and costs and Declaration of Louis Pechman in Support of Plaintiff's Motion for Attorneys' Fees and Costs; and

  l. reviewed defendants' document productions.

27. Based on the prevailing rates for attorneys of Ms. Duguay's experience while working at BWP as a second-year attorney with the requisite experience in federal litigation, BWP seeks a rate of $150 per hour. This rate is at or below the rate that clients routinely and customarily pay for services such as those rendered by Ms. Duguay. Moreover, this rate is consistent with the rates awarded to labor and employment litigators of comparable experience in New York City, where BWP is located.

28. As set forth in the billing records attached as Exhibit A, Ms. Duguay expended more than 329.7 hours in this matter between November 13, 2006, and June 13, 2008. Accordingly, BWP respectfully requests a fee award of $ 49,455.00 for Ms. Duguay's work in this matter.

**Conclusion**

29.     In sum, BWP requests a fee award of an award of attorneys' fees in the amount of $ 117,125.00 and costs of $ 2,612.15, for a total of $119,737.15.

Dated:  New York, New York
        June 13, 2008

_Louis Pechman_